Fay I. PIXTON, Plaintiff and Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. OF BLOOMINGTON, ILLINOIS, and International Rehabilitation Associates, Inc., Defendants and Appellee.

No. 900119–CA.

Court of Appeals of Utah.

April 8, 1991.

Matt Biljanic (argued), Midvale, for plaintiff and appellant.

Philip R. Fishler (argued), and Stephen J. Trayner, Strong & Hanni, Salt Lake City, for defendants and appellee.

Before BILLINGS, GARFF and RUSSON, JJ.

OPINION

BILLINGS, Judge:

Fay I. Pixton (Pixton) appeals from the summary judgment dismissing her claims against State Farm Mutual Automobile Insurance Company (State Farm) based on breach of contract, breach of an implied covenant of good faith and fair dealing, and fraud. We affirm.

On March 12, 1984, an unattended runaway automobile owned by Robert Davies (Davies) hit Pixton's car. At the time of the accident, State Farm insured both Pixton and Davies under separate and unrelated policies.

Pixton sought medical treatment at a local hospital immediately following the accident for abrasions to her kneecap and wrist. Subsequently, several physicians treated Pixton for injuries from the accident. In July 1984, one of State Farm's agents contacted International Rehabilitation Associates (IRA) to assist State Farm in the evaluation of Pixton's medical condition. State Farm paid IRA directly for its services.

Pixton incurred $871.51 in medical expenses resulting from the accident. State Farm fully reimbursed Pixton for these medical expenses under her personal injury protection or no-fault insurance coverage with State Farm. Subsequently, Pixton made a third-party claim against State Farm, as the liability insurer of Davies, for alleged additional damages Pixton sustained in the accident. Initially, State Farm offered Pixton $2,500 to settle her claim, but Pixton refused the offer. Thereafter, Pixton demanded that State Farm and IRA inform her of the costs of the services rendered by IRA on her claim to enable Pixton to evaluate her claim for settlement. Both State Farm and IRA refused.

In March 1987, Pixton brought an action against State Farm and IRA alleging multiple causes of action. In December 1987, Pixton brought an action against Davies for her injuries arising out of the accident. During the pendency of this latter action, Pixton obtained the information she had requested regarding State Farm's payments to IRA. In both actions, State Farm claimed that the cost of IRA's services was properly categorized as a "file expense" rather than a "medical expense." Pixton requested a pre-trial ruling that the IRA expenses were "medical expenses" for the treatment of her injuries from the accident rather than file expenses, but the judge declined to rule on Pixton's motion prior to trial. On the day of trial, Pixton elected to accept $7,500 in settlement of her claims against Davies. Following her settlement with Davies, Pixton amended her complaint against State Farm asserting breach of contract, breach of an implied covenant of good faith and fair dealing and fraud.

In July 1990, State Farm moved for summary judgment. In opposition to this motion, Pixton relied on an affidavit from an "expert" insurance adjustor who stated that the conduct of State Farm toward Pixton presents "substantial evidence of the insurer's failure to satisfy its legal duties of good faith and fair dealing in the adjustment of plaintiff's insured loss." The affiant specifically stated that, in his opinion, State Farm breached its duty by not using separate adjustors for Pixton's and Davies' policies and by failing to disclose the IRA expenses.

In December 1990, the trial court granted summary judgment in favor of State Farm finding: (1) there was no conflict of interest where the adjustor handled both first and third-party claims made by Pixton, (2) Pixton waived her claim by settling the third-party action, and (3) since the action is based on a third-party claim, the affidavit of the "expert" insurance adjustor was inapplicable. It is from that order that Pixton appeals.

## STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ehlers & Ehlers Architects v. Carbon County*, 805 P.2d 789, 791 (Utah Ct.App.1991); *Shire Dev. v. Frontier Inv.*, 799 P.2d 221, 222–23 (Utah Ct.App.1990). We view the facts and inferences in a light most favorable to the losing party and only affirm the judgment where there is no genuine dispute as to a material fact or where, viewing the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law. *Id.* Because summary judgment is not granted as a matter of fact, but rather as a matter of law, we review the trial court's legal conclusions for correctness. *See id.*

## DUTY OF GOOD FAITH AND FAIR DEALING

Pixton argues that an insurance company which insures a tortfeasor under a liability policy has an obligation to deal fairly and in good faith with an injured third-party who has a claim against the insurance company's insured. Pixton contends that State Farm breached this duty of good faith and fair dealing by not settling her claim promptly and fairly, by not giving her the information regarding IRA's costs and services she needed to evaluate the potential value of her claim and by employing the same adjustor for both Pixton's first-party no-fault claim and her third-party claims.

■ The parties do not refer us to, nor were we able to locate Utah authority that either recognizes or rejects the imposition on an insurer of a duty to deal fairly and in good faith with an injured third-party who has made a claim against the company's insured. This precise issue is one of first impression in this state. Nevertheless, the nature of the obligation of good faith and fair dealing in an insurance context has been developed in recent Utah case law and we find these cases illuminating in our consideration of Pixton's claims.

In *Beck v. Farmers Ins. Exch.*, 701 P.2d 795 (Utah 1985), the Utah Supreme Court addressed the nature of the duty of good faith and fair dealing in the context of a first-party insurance relationship. In *Beck*, the insured claimed his insurer had refused in bad faith to settle his first-party claim for uninsured motorist benefits. The *Beck* court ultimately recognized an implied duty of good faith and fair dealing between an insurer and its insured based on the insurance contract. *Id.* at 801.

Grounding the good faith duty in a first-party situation[1] in contract, the court concluded that the implied obligation of good faith "contemplates, at the very least, that the insurer will thereafter act promptly and reasonably in rejecting or settling the claim." *Id.* at 801. The duty also "requires the insurer to 'deal with laymen as laymen and not as experts in the subtleties of law and underwriting,' and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract." *Id.* (quoting *MFA Mutual Ins. Co. v. Flint*, 574 S.W.2d 718 (Tenn.1978)). The court reasoned that such performances were what the insured had "bargained and paid for, and the insurer has the obligation to perform them," or be liable for damages sustained as a result of the breach. *Beck*, 701 P.2d at 801. The supreme court emphasized that the duty to settle claims in good faith is tied to the insurance contract and runs to the insured. *See id.* at 799–800. Although faced with a first-party situation, the court in *Beck* also emphasized that, even in third-party situations, "the contract itself creates a fiduciary relationship because of the trust and reliance placed in the insurer by the insured." *Id.* at 799.

---

**1.** Contrasting first-party situations with third-party situations, we note that in a first-party situation the insurer agrees to pay claims submitted by the insured for losses suffered by the insured. In a third-party situation, however, the insurer agrees to defend the insured against claims made by third-parties against the insured and to pay resulting liability up to a specified amount. *See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798 n. 2 (Utah 1985).

This court recently dealt with a first-party insurance dispute in *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950 (Utah Ct. App.1989). An insured claimed that his automobile insurer had acted in bad faith by assisting the county attorney in prosecuting him for insurance fraud and by initiating a civil suit against him to recover the proceeds paid to him under his first-party insurance contract. These bad faith allegations involved acts occurring after the policy had been cancelled due to the insured's failure to pay the premiums. In *Amica*, although we did not specifically determine whether a duty of good faith existed once the policy was not in effect, we stated that "[i]n order to maintain an action under a contractual theory of insurer bad faith, the parties must be in privity of contract at the time of the alleged wrong." *Id.* at 958 (citing *Ammerman v. Farmers Ins. Exch.*, 19 Utah 2d 261, 430 P.2d 576, 577 (1967)).

In *Ammerman*, the Utah Supreme Court was faced with a third-party situation. An accident victim claimant became a judgment creditor of the insured tortfeasor and brought an action against the tortfeasor's insurer for bad faith. The plaintiff-victim argued that the insurer had acted in bad faith toward its insured tortfeasor by failing to reasonably settle the plaintiff's claim before trial. The supreme court recognized that an insured had a right to expect his liability insurance company to represent the insured's interests by acting reasonably and in good faith in settling third-party claims against its insured, and that the insurance company's duty was a fiduciary one, sounding in tort. *Ammerman*, 430 P.2d at 578. However, the court refused to allow the third-party judgment creditor to pursue this claim. The court in *Ammerman* noted that "at the time of the alleged wrong by the defendant company it had no privity of contract with [plaintiff] and therefore owed him no duty, so there could be no breach thereof." 430 P.2d at 577 (citations omitted). The court continued that "a judgment creditor has no right to appropriate a tort claim of his debtor." 430 P.2d at 578.

*Beck* and *Amica* specifically define the duty of good faith and fair dealing as a contractual duty running from the insurer to its insured. In *Ammerman*, the supreme court indicated that the duty of good faith and fair dealing, even in third-party situations where the insurer has a fiduciary duty to fairly defend its insured, arose "because of the policy," and was "regarded as a separate cause of action for a wrong done to the *insured* by violating a fiduciary duty owed him." *Ammerman*, 430 P.2d at 578 (emphasis added). The court further noted that the insurer's fiduciary obligation in third-party situations resulted from the *covenant* an insurer makes to defend an insured. *Id.* The court thus denied a third-party injured claimant the right to assert such a claim.

In the case before us, Pixton has no relevant contractual relationship with State Farm. Pixton makes no claim that State Farm failed to perform any obligation under her no-fault insurance policy with State Farm. All Pixton's claims are grounded in her status as an injured claimant attempting to recover against State Farm as the insurer of the tortfeasor, Davies. Pixton claims State Farm acted in bad faith by failing to properly settle her claim against Davies, by not initially disclosing the expenses associated with IRA's services in her tort action, by characterizing those expenses as "file expenses," and by utilizing the same adjustor for both her first-party claim under her policy and her third-party claims under Davies' policy. Pixton, however, does not articulate how the utilization of the same adjustor prejudiced her first-party no-fault claims. In fact, she cannot as all her first-party claims were settled to her satisfaction. Thus, under *Beck*, State Farm owes Pixton no duty as there is no relevant contractual relationship. Neither is there a duty under *Ammerman* as there is no fiduciary relationship based on a covenant to defend.

In sum, we are persuaded that there is no duty of good faith and fair dealing imposed upon an insurer running to a third-party claimant, such as Pixton, seeking to recover against the company's insured. This conclusion is consistent with the commentators and the great majority of courts

in other jurisdictions that have been confronted with the issue. As one well-known commentator on insurance law noted, "[t]he duty to exercise due care or good faith is owed to the insured and not to a third party." 14 G. Couch, *Couch on Insurance* § 51:136 (rev.2d ed. 1982).

The majority of courts faced with the potential existence of a duty of good faith and fair dealing running from an insurance company to a third-party claimant seeking to recover against the company's insured have rejected such a notion. *See, e.g., O.K. Lumber Co., Inc. v. Providence Washington Ins. Co.*, 759 P.2d 523, 525–26 (Alaska 1988) (refusing to extend duty of good faith and fair dealing owed by insurer to third-party claimant as the common law duty only benefits the insured stating "[a]n insurer could hardly have a fiduciary relationship both with the insured and a claimant because the interests of the two are often conflicting"); *Scroggins v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 685, 393 N.E.2d 718, 721 (1979) (in the absence of statutory or contractual authority, third-party claimant cannot sue insurer for breach of duty of good faith and fair dealing as "that duty is one which the insurer owes to its insured, not to third parties"); *Linscott v. State Farm Mut. Auto. Ins. Co.*, 368 A.2d 1161, 1163 (Me. 1977) ("'duty of good faith and fair dealing' in the handling of claims runs only to an insurance company's insured"); *Bean v. Allstate Ins. Co.*, 285 Md. 572, 403 A.2d 793 (Ct.App.1979) ("insurer owes no duty to a claimant to settle a claim ... obligation to deal with settlement offers in good faith runs only to the insured") (citing *Ammerman*); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (1976) (duty to deal in good faith applies between insurer and insured); *Niemeyer v. United States Fidelity and Guar. Co.*, 789 P.2d 1318 (Okla.1990) (in the absence of statutory or contractual relationship, third-party claimants cannot bring bad faith action against insurer as they are strangers to the contract); *Auclair v. Nationwide Mut. Ins. Co.*, 505 A.2d 431 (R.I.1986) (no duty or fiduciary

obligation running from insurer to third-party claimant); *Kranzush v. Badger State Mut. Casualty Co.*, 103 Wis.2d 56, 307 N.W.2d 256 (1981) (insurer's duty of good faith arises from contract and runs to insured and cannot be implied in favor of third-party claimant as claimant is stranger to contract and fiduciary relationship it represents).

■ Pixton attempts to distinguish her third-party claimant position claiming that she had a contractual relationship with State Farm under her no-fault policy. However, she does not challenge the settlement of her claim under that policy or articulate how State Farm breached any duty under her first-party contract with it.

The New Mexico Court of Appeals was faced with a similar situation in *Chavez*, 553 P.2d 703. In *Chavez*, the plaintiff was injured in an automobile accident and brought suit against the driver of the other vehicle, her insurance company, and the insurer of the tortfeasor's vehicle which, as in the case before us, happened to be the same insurance company. Among other things, the court held that plaintiff had properly alleged causes of action against her insurer for unreasonable delay in paying medical expenses. However, the court concluded that, in her capacity as a third-party claimant against the tortfeasor's policy, plaintiff had no claim for relief for bad faith as "[t]he 'bad faith dealing' rule applies between an insurer and insured." *Id.*, 553 P.2d at 709, and this rule applied even though the plaintiff may have had another policy with the insurer. The court noted that the dealings between plaintiff and the insurer regarding the tortfeasor's fault were "arm's length dealings." *Id.* In *Chavez*, the plaintiff also made a claim that the insurer breached a general fiduciary duty owed to her. In addressing the propriety of this claim, the New Mexico Court of Appeals indicated that the simple fact that the same insurer insured both parties did not create a fiduciary relationship between the plaintiff and the insurer with respect to the unrelated policy. *Id.*[2]

**2.** We note that Pixton relies on *Rawlings v.*

*Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986) as

In light of the undisputed facts before the district court, summary judgment was appropriate because, as a matter of law, State Farm did not owe Pixton a duty to deal fairly and in good faith with her in her capacity as a third-party claimant against State Farm as the insurer of the tortfeasor Davies. In the absence of a duty, any breach of duty testimony contained in the affidavit of the "expert" insurance adjustor was simply irrelevant.

## FRAUD

 In Pixton's complaint against State Farm she also included various allegations of fraud. The trial court granted summary judgment dismissing all her claims including those sounding in fraud. In her notice of appeal, Pixton preserved a potential claim of error regarding her fraud cause of action. In her appellate brief, however, Pixton does not even discuss, let alone analyze, why the dismissal of her fraud claim was error. Generally, where an appellant fails to brief an issue on appeal, the point is waived. *See, e.g., Union Oil Co. of Calif. v. State,* 677 P.2d 1256, 1259 (Alaska 1984) (points initially raised on appeal but not briefed are considered abandoned); *Quality Furniture, Inc. v. Hay,* 61 Haw. 89, 595 P.2d 1066, 1068 (1979) (issues raised but not argued in brief are waived); *Northwest National Gas Co. v. Georgia–Pacific Corp.,* 53 Or. App. 89, 630 P.2d 1326, 1329 (assigned errors not briefed are waived), *review denied,* 291 Or. 893, 642 P.2d 309 (1981); *Kurpjuweit v. Northwestern Dev. Co., Inc.,* 708 P.2d 39, 46 (Wyo.1985) (errors not asserted are waived or abandoned). Because Pixton has not articulated how the district court erred, and we find no support for her fraud claim in the record, we affirm the trial court's ruling on appeal.

GARFF and RUSSON, JJ., concur.

authority directly supporting the imposition of a duty of good faith and fair dealing where an insurer is both the first-party insurer and the tortfeasor's insurer and where the insurer has unreasonably impeded recovery on the liability policy. We agree that *Rawlings* did impose a duty in this context. However, the duty of good faith and fair dealing outlined by the Arizona court is one sounding in tort. Utah has carefully adopted a more restrictive contract approach. Furthermore, the actions of the insurer in *Rawlings* amounted to an independent tort. *Cf. Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 800 n. 3 (Utah 1985) (recognizing that some acts that breach a contract give rise to tort causes of action independent of an implied covenant of good faith). In the Arizona case, the Rawlings had a $10,000 fire policy with Farmers. The Rawlings suffered a $40,000 fire loss. The Rawlings believed the fire was negligently caused by a third-party and informed Farmers of this fact. Farmers agreed to investigate Rawlings' suspicion and to give Rawlings a copy of the written report resulting from the investi-gation. Upon investigation, the Farmers adjustor learned that Farmers also had a $100,000 liability policy covering the tortfeasor. Farmers never informed Rawlings of this insurance policy. Thereafter, Farmers refused to give Rawlings the report and intentionally withheld critical information necessary for Rawlings to pursue its claim against the tortfeasor. The Arizona court characterized the conduct as follows: "The evidentiary facts indicate that Farmers pursued its objective [of preventing Rawlings suit against the tortfeasor] by deceit, non disclosure, reneging on promises, violation of industry custom and deliberate attempts to obfuscate." *Id.,* 726 P.2d at 577.

Finally, we are not persuaded that the analysis of the Arizona court is consistent with *Beck. Cf. Hettwer v. Farmers Ins. Co. of Idaho,* 118 Idaho 373, 797 P.2d 81 (1990) (refusing to adopt *Rawlings* approach when reviewing dismissal of third-party bad faith claims of party insured by same insurance company as tortfeasor because *Rawlings* involved imposition of a tort-based duty in a first-party situation).